T.C. Memo. 2012-127

UNITED STATES TAX COURT

ALTA F. ELLIS-BABINO, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26355-09.                    Filed May 2, 2012.


        R disallowed P's claimed $1 million general business credit resulting in his determining deficiencies in income tax and I.R.C. sec. 6662(a) accuracy-related penalties for P's 2005, 2006, and 2007 tax years.

        Held:  P is liable for the deficiencies.

        Held, further, P is liable for the I.R.C. sec. 6662(a) accuracy-related penalties.


Alta F. Ellis-Babino, pro se.

<u>Michael W. Tan</u>, for respondent.

MEMORANDUM OPINION

WHERRY, Judge:  This case is before the Court on a petition for redetermination of income tax deficiencies and accuracy-related penalties.  In a notice of deficiency respondent disallowed petitioner's claimed carryover from 2003 of a $996,848 general business tax credit to the 2005, 2006, and 2007 tax years.  Respondent then determined income tax deficiencies and section 6662(a) accuracy-related penalties for those years.[1]

The issues stem from a $1 million general business tax credit petitioner originally claimed on Form 3800, General Business Credit (credit), attached to her 2003 Federal income tax return.  Petitioner carried over unused portions of that credit to the years at issue.  The issues for decision are whether petitioner is liable for the income tax deficiencies and section 6662(a) accuracy-related penalties for each of the 2005, 2006, and 2007 tax years.

Background

This case was submitted fully stipulated pursuant to Rule 122.  The parties' stipulation of facts, with accompanying exhibits, is incorporated herein by this

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the taxable years at issue.  The Rule references are to the Tax Court Rules of Practice and Procedure.

reference. At the time the petition was filed, petitioner, a retired school teacher, resided in California.

On September 16, 2009, respondent mailed to petitioner a statutory notice of deficiency determining the following deficiencies and section 6662(a) accuracy-related penalties:

| Year | Deficiency | Penalty Sec. 6662(a) | Total |
|------|-----------|----------------------|-------|
| 2005 | $1,199 | $239.80 | $1,438.80 |
| 2006 | 2,283 | 456.60 | 2,739.60 |
| 2007 | 4,895 | 979.00 | 5,874.00 |
| Total | 8,377 | 1,675.40 | 10,052.40 |

On November 6, 2009, petitioner filed with this Court her petition disputing these amounts. The case was docketed as docket No. 26355-09S.[2] In an attachment to her petition petitioner stated:

> This taxpayer has submitted proof of ownership interest in a
> S-Corporation, AFAYE, INC # 29-16907217 established in the state of
> Nevada (circa) 1999 for the purpose of passing "GENERAL
> BUSINESS TAX CREDITS" from a FIDUCIARY/CUSTODIAL
> SAFE KEEPER, i.e ., a U.S. CHARTERED NATIONAL BANK who
> sold the TAXPAYER one UNIT of TAX CREDITS under IRC

---

[2]On petitioner's motion, and without any objection by respondent, this Court removed the sec. 7463 small case "S" designation by order on February 4, 2010, thereby converting this matter to regular case status and changing the docket number to 26355-09.

sections 6111(b) and 8271 for a sum of $50,000 cash equivalent between 1995 and 2000 . It was announced by the NATIONAL BANK DEPOSIT GUARANTY NATIONAL BANK of JACKSON, MISSISSIPPI during that purchase period that one (1) unit of these GENERAL BUSINESS TAX CREDITS equated to a $1,000,000 cash value that could be used to reduce ones tax liability on earned INCOME and LOSSES.

On February 17, 2010, respondent sent to petitioner a letter informing her of Rule 91, which requires that the parties stipulate all relevant matters not in dispute, and requesting that petitioner submit documents to that extent. In this letter respondent asked for documents supporting petitioner's eligibility to use the $1 million general business tax credit, including a canceled check for $50,000 she paid for the credit, activity logs or employment records showing she conducted research eligible for the credit, and receipts or other documentation showing that she incurred $1 million in eligible expenses.

On February 25, 2010, respondent received a letter from petitioner in which she made four numbered "Point[s]". Petitioner's point 1 was: "To my knowledge I have never made a claim stating an entitlement or eligibility to use $1,000,000 in general tax credits." Petitioner's point 2 was that her late spouse had purchased a "$50,000 financial instrument from Deposit Guaranty National Bank" and that she did not have any canceled checks, money orders, receipts or other documents related to it and that she "never personally held them at any time". Petitioner's

point 3 was that to her knowledge she "never claimed that   * * * [she] participated or conducted any research that would give * * * [her] a general business tax credit entitlement." Finally, as point 4, petitioner reiterated that "I never claimed to have incurred a $1,000,000 expense that would make me eligible for any general business tax credit." Included with this letter petitioner attached a "Declaration of Alta F. Ellis-Babino" in which she states:

> In the late 1990's, my late spouse, Clovis Babino, along with several other people met * * * in order to purchase a combination of tax credit/bearer bonds that the DGNB [Deposit Guaranty National Bank] was selling. The instruments were selling for $50,000 per unit. Each unit was stated to have a tax credit value of $1,000,000,000 [sic].

On March 1, 2010, respondent received additional information from petitioner. With this information petitioner included the same letter with the points and declaration discussed above but also included a copy of a "GUARANTEED TAX SHELTER BEARER CERTIFICATE" that stated: "each unit amount $1,000,000 TO THE ORDER OF LAMAR ELLIS, TTEE." Dr. Lamar Ellis is petitioner's brother.

On March 8, 2010, respondent sent to petitioner a letter acknowledging receipt of her February 25, 2010, letter and indicating the inconsistent positions she had taken with respect to the credit. The letter stated: "If it is your position that you never claimed such credit, then the tax shown on the notice of deficiency would

accurately reflect your position. Accordingly, I will interpret this to mean you are not disputing the tax, but instead are seeking resolution of the accuracy related penalty." The letter further discussed petitioner's other points, expressing some confusion as to her actual position and suggesting a face-to-face or a telephone conference.

On March 25, 2010, respondent received a letter from Dr. Ellis stating that because of petitioner's health he would be handling her tax matters. Dr. Ellis stated that petitioner maintains her position from points 1 and 4 and that "the above 3800 carry forward amount is a result of her tax advisor's lack of knowledge how her 2002/2005 Form 8283 Trade Secret portion of contribution to qualified CDC's should be treated." Dr. Ellis also stated that "Tax payer [sic] Babino is still claiming the credit but believes that it should be shown as an 8847 credits upon 6765 or 3800." He further stated that she "relinquish[ed]" points 2 and 3. Included with this letter was a Form 2848, Power of Attorney and Declaration of Representative, designating Gertrude and Lamar Ellis as petitioner's representatives.

On September 17, 2010, respondent received a fax from petitioner dated August 15, 2010. The fax stated:

The petitioner was asked by Lamar Ellis to join his scientific "think tank" in 1990, for the purpose of writing and submitting copyrights, trade secrets, trademarks, FDA 510-K's, technical know-how implementation of durable medical equipment (DME), and pharmaceutical applications to the U.S. Drug Enforcement Administration, all of which were related to the treatment/cure of "Rare Diseases". The petitioner spent an estimated ten (10) hours a week performing these tasks from 1990-2004 without payment with a promise from Dr. Lamar Ellis and Dr. Lamar Ellis Charitable Remainder Trust that the petitioner would receive tax credit percentage if and when the contribution was made to a faith based organization * * *.

On September 20, 2010, respondent received a fax from petitioner titled "Declaration of Lamar Ellis at the request of the petitioner" which included the excerpted statement from the September 17, 2010, fax and went on to state:

Because petitioner is a beneficiary of the Dr. Lamar Ellis Charitable Remainder Trust, she is also claiming a certain percentage of Dr. Lamar Ellis (CRT) Rare Disease Orphan Drug Research R&D tax credits. These tax credits were generated by Lamar Ellis and other(s), starting in 1986 under a U.S. Treasury Dept./NASA Doctorate Program, known as the Rare Diseases/Orphan Drug Research act. These R&D tax credits are non-expiring and must be carried forward yearly via Form(s) 6765 or 3800, according to Lamar Ellis.

This fax also stated that petitioner, in answer to respondent's question, did claim the "R&D tax" to reduce her taxes for the years 2005, 2006, and 2007. Petitioner also stated that she disagreed with respondent "because she now realizes that her answers to that 3/15/10 correspondence were proof less. The petitioner will now

rely upon the above declaration of Lamar Ellis and will also present him as my expert witness."

On October 1, 2010, petitioner mailed to respondent a letter, dated September 24, 2010, titled "Final Comments!!!".  This letter was essentially the same as the September 20, 2010, fax, but also included petitioner's 2005, 2006, and 2007 tax returns.[3]

On November 1, 2010, respondent received two letters from petitioner.  One of the letters, dated August 5, 2010, stated that petitioner would submit her own stipulation of facts and exhibits.  The other letter stated that "Petitioner desire [sic] to file a motion to submit subpoena(s) for recordation purposes" and included copies of subpoenas from the U.S. Tax Court which petitioner had typed.

On December 13, 2010, petitioner presented four sets of documents to respondent.  These documents were mostly typewritten discussions prepared for this litigation on the research done by Dr. Ellis and his Dr. Lamar Ellis Trust.

---

[3]The Court's copy of the 2006 Form 1040, Individual Income Tax Return, is missing page 2.

Respondent reserved objections to Exhibits 8-J, 10-J, 11-J, and 15-J through 18-J on the grounds of authenticity, relevancy, and truth of the documents.[4]

Discussion

## I.    Burden of Proof

The Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is improper.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, pursuant to section 7491(a)(1), the burden of proof as to a factual issue that affects the taxpayer's tax liability may be shifted to the Commissioner.  Sec. 7491(a).  Petitioner did not argue that the burden should shift and, as we find below, failed to maintain the required records or comply with the substantiation and cooperation requirements of section 7491(a)(2).  Accordingly, the burden of proof remains on petitioner.

---

[4]The Court finds that these exhibits are relevant to the case at hand; accordingly we overrule respondent's objections.  Fed. R. Evid. 401 defines "Relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

## II.     Petitioner's Contentions

Petitioner did not present a coherent argument as to her entitlement to the claimed $1 million general business credit. After earnestly piecing through each of petitioner's often conflicting statements in the correspondence discussed above the Court believes that she has conceded that she was never entitled to the general business credit but alleges that she is entitled to a research and development credit. Petitioner apparently also abandons her statements that her husband purchased a tax shelter for $50,000 which allowed her the credit.

## III.     Mystery Credit

Respondent believes and we agree that petitioner appears to be referring to either the so-called Orphan Drug Credit of section 45C or the so-called Increasing Research Activities Credit of section 41. Section 45C(b)(2)(B) provides that the Orphan Drug Credit may be allowed for qualified clinical testing expenses related to a "rare disease or condition * * * designated under section 526 of the Federal Food, Drug, and Cosmetic Act." Section 41(c) explains that the Increasing Research Activities Credit may be allowed for research and development expenses incurred over a baseline amount determined by a formula contained in that section.

Petitioner did not present any evidence that she incurred any expenses related to clinical trials or research and development. There are no receipts or other

documents concerning expenses in the record. Petitioner fails to meet her burden of proving that respondent's determinations were improper and is therefore liable for the deficiencies in income tax for the years at issue.

IV.    Section 6662(a) Penalties

Respondent determined that petitioner is liable for section 6662(a) accuracy-related penalties for her 2005, 2006, and 2007 tax years. Pursuant to section 7491(c), the Commissioner has the burden of production with respect to a taxpayer's liability for a penalty and is therefore required to "come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty." See Higbee v. Commissioner, 116 T.C. 438, 446 (2001); see also Swain v. Commissioner, 118 T.C. 358, 364-365 (2002). However, "once the Commissioner meets his burden of production, the taxpayer must come forward with evidence sufficient to persuade a Court that the Commissioner's determination is incorrect." Higbee v. Commissioner, 116 T.C. at 447.

Subsection (a) of section 6662 imposes an accuracy-related penalty of 20% of any underpayment that is attributable to causes specified in subsection (b). Respondent asserts that petitioner's underpayment was attributable to negligence or disregard of rules and regulations. See sec. 6662(b)(1).

"[N]egligence includes any failure to make a reasonable attempt to comply with the provisions of this title" (i.e., the Internal Revenue Code). Sec. 6662(c). Under caselaw, "'Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991).

There is an exception to the section 6662(a) penalty when a taxpayer can demonstrate that: (1) there was reasonable cause for the underpayment and (2) the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c)(1). Regulations promulgated under section 6664(c) provide that the determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent met his burden of production, and petitioner did not address the section 6662(a) penalties. Petitioner presented no evidence that she had reasonable cause for any portion of any underpayment. See Basile v. Commissioner, T.C. Memo. 2005-51 ("Because petitioners did not contest the additions to tax or

penalties in the petitions, they are deemed conceded." (citing Rule 34(b)(4) and Swain v. Commissioner, 118 T.C. at 364-365 )).

The Court has considered all of petitioner's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

Decision will be entered

for respondent.