OPINION Buch, Judge: Respondent determined deficiencies, additions to tax, and penalties with respect to petitioners’ joint Federal income tax as follows: Year Addition to tax Deficiency sec. 6651(a)(1) Penalty sec. 6662(a) 2006 $3,540 $100 $708.00 2007 3,901 100 780.20 2008 8,127 -0-1,625.40 Because the parties have resolved all other issues by stipulation, the only issue for the Court to decide is the amount of the penalty under section 6662(a)[1] for 2008. Determining that amount requires us to first determine the “underpayment of tax required to be shown” on petitioners’ 2008 tax return. See sec. 6662(a) (imposing 20% penalty on specified portions of “an underpayment of tax required to be shown on a return”); sec. 6664(a) (defining “underpayment”). This, in turn, requires that we determine “the amount shown as the tax” on petitioners’ 2008 return. See sec. 6664(a)(1)(A). Respondent argues that the amount shown as tax on the return is reduced by the refundable credits claimed on the return. Under this approach, the amount shown as tax on the return is -$7,327. Petitioners argue that the amount shown as tax bn the return is calculated without regard to refundable credits. Under this approach, the amount shown as tax on the return would be $144. The Cardozo Tax Clinic argues in its amicus brief (and petitioners argue in the alternative) that the amount shown as tax on the return is reduced by the refundable credits but not below zero. Under this approach, the amount shown as tax on the return would be zero. This last result is correct, because it is the only approach supported by principles of statutory construction. Background Petitioners Rand and Klugman, who were a married couple during 2008, timely filed a 2008 joint Federal income tax return on Form 1040, U.S. Individual Income Tax Return. On line 7 of their Form 1040 they reported “Wages, salaries, tips, etc.” of $17,200. They attached to the Form 1040 a Form 4852, Substitute for Form W-2,[2] that Rand signed and that stated that he had earned $17,200 in “Wages, tips, and other compensation”. Petitioners reported business income of $1,020 from Rand’s work as a tutor. Lastly, they deducted $72 for one-half of the self-employment tax liability imposed by section 1401. In total petitioners reported that their adjusted gross income was $18,148. This income was reduced to zero by various deductions. Petitioners claimed a standard deduction of $10,900 and a deduction of $14,000 resulting from four personal exemptions. The result on line 43, where taxable income is reported, was zero, which in turn resulted in a tax liability on line 44 also of zero. The 2008 Form 1040 has several lines that set forth amounts of tax. Starting with a tax of zero on line 44, petitioners reported $144 of self-employment tax on line 57. This resulted in a “total tax” on line 61 of $144. Credits and Refund The total tax of $144 was reduced, below zero, by refundable tax credits. Petitioners claimed an earned income credit of $4,824, an additional child tax credit of $1,447, and a recovery rebate credit of $1,200. They reported that they had two qualifying children for the purpose of calculating the earned income credit and the additional child tax credit, and they further reported that each child lived with them in the United States during all 12 months of 2008. To determine qualification, both the earned income tax credit and the additional child tax credit take into account the amount of earned income, and petitioners reported earned income of $18,148 on Schedule 8812, Child Tax Credit. This amount represents $17,200 of wages and $1,020 of self-employment earnings, reduced by $72 for one-half of self-employment taxes. After taking into account the refund^ able credits, petitioners claimed an overpayment of $7,327 on line 72 of their return, and on line 73, they requested that the full amount be refunded to them. On May 4, 2009, the Internal Revenue Service (IRS) refunded the $7,327. Agreed Adjustments The IRS sent a notice of deficiency to petitioners on December 10, 2010. The notice sets forth adjustments to tax and penalties for tax years 2006, 2007, and 2008, but only the penalty for 2008 remains at issue. The parties have resolved all issues for 2006 and 2007 by stipulation. For 2008 the notice of deficiency contains several adjustments, nearly all of which the parties have resolved by stipulation. [3] As is relevant to the dispute before us, the notice of deficiency determined that petitioners were not entitled to the earned income tax credit or the child tax credit; petitioners agreed. Also, the notice of deficiency determined that an accuracy-related penalty under section 6662 applies; the parties agree that a penalty applies “if the Court determines that there is ‘an underpayment of tax required to be shown on the return’ within the meaning of I.R.C. § 6662(a)”. In addition to the adjustments set forth in the notice of deficiency, respondent filed an amendment to his answer in which he asserted that petitioners were not entitled to the recovery rebate credit (along with a corresponding increase in the penalty under section 6662). Petitioners agreed to this adjustment. Thus, after concessions, the sole issue remaining to be decided is whether there is an “underpayment” upon which an accuracy-related penalty can be computed. Positions of the Parties The parties submitted the case without trial pursuant to Rule 122. Petitioners have conceded that they are liable for the accuracy-related penalty for 2008 if there is “an underpayment of tax required to be shown on a return” as that phrase is used in section 6662(a). It follows from the concession that petitioners have waived any defense based on reasonable cause. See sec. 6664(c). For the purposes of part II of subchapter A of chapter 68 of the Code, which includes section 6662, the term “underpayment” is defined by section 6664(a). It consists of four components: (1) the “tax imposed” (2) “the amount shown as the tax by the taxpayer on his return” (3) “amounts not so shown previously assessed (or collected without assessment)”, and (4) “the amount of rebates made”. In their briefs the parties agree that the first component is $144, the third component is zero, and the fourth component is zero. Their dispute is about the second component: the amount shown as the tax by the taxpayer on the return. The IRS contends that the statutory phrase “the amount shown as the tax” is ambiguous as to whether the amount includes the three refundable credits petitioners claimed on their 2008 return. The IRS contends that the Court should consult the definition of this phrase in section 1.6664-2(c), Income Tax Regs., and that this regulation should be interpreted to require that petitioners’ claims for the three credits be included in the computation of the amount shown as tax on their return. The IRS contends that its interpretation of the regulation should be afforded deference under the principle that an agency’s interpretation of its own ambiguous regulation must be afforded deference. See Auer v. Robbins, 519 U.S. 452, 461 (1997). Petitioners contend that the Code unambiguously excludes any credits claimed on a return from the computation of the amount of tax shown on the return. According to petitioners, the provisions in the Code allowing tax credits clearly distinguish between credits and the taxes against which credits are applied. For example, section 24(a) provides a “credit against the tax imposed by this chapter”. To petitioners, this means that the additional child tax credit they claimed is not part of the tax shown on their return. Petitioners also observe that in defining the amount of tax shown on the return for calculating a deficiency, section 6211(b)(4) provides that the difference between (1) the refundable credits [4] claimed on the return and (2) the amount shown as tax on the return (as determined without regard to refundable credits) is taken into account as a negative amount of tax. Because Congress did not enact a similar provision for the calculation of an underpayment, petitioners contend that Congress must have intended that refundable credits be excluded from the tax shown on the return in underpayment calculations. Petitioners make the following alternative argument: “Even if the refundable credits at issue were to be included in the calculation of the amount of tax shown by Petitioners on their return, there is no statutory or regulatory basis for reducing the amount of tax below zero. Thus, any underpayment would be limited to the amount of the credit against Petitioners’ reported self-employment tax.” This position was also presented by the Cardozo Tax Clinic. The Cardozo Tax Clinic filed an amicus brief contending that the three types of credits petitioners claimed are part of the amount shown as tax on the return when calculating an underpayment. However, the Clinic contends that the tax shown on a return cannot be negative when calculating an underpayment because Congress purposefully declined to incorporate a provision like section 6211(b) in the definition of an underpayment. Thus, the Clinic disagrees with petitioners’ primary argument that credits are excluded from the calculation of the tax shown on the return, but it agrees with petitioners’ alternative argument. Discussion The issue to be resolved is the amount of tax shown on the return (within the meaning of section 6664(a)(1)(A)) for a 2008 income tax return that reported: • $0 of income tax under section 1, • $144 of self-employment tax under section 1401, • $1,447 of additional child tax credit, • $4,824 of earned income credit, and • $1,200 of recovery rebate credit, resulting in • $7,327 of overpayment, claimed as a refund. The positions taken are: (a) -$7,327, as the IRS argues, (b) $144, as petitioners argue, or (c) $0, as the Clinic argues (and as petitioners argue in the alternative). We hold that the amount is zero. The result of this conclusion is that, for penalty computation purposes, petitioners have an underpayment of $144. Operative Provisions Section 6662(a) provides the rules for the application of an accuracy-related penalty, including a penalty that is predicated on negligence or a substantial understatement of income tax. Subsection (a) provides: SEC. 6662(a). IMPOSITION OF PENALTY. — If this section applies to any portion of an underpayment of tax required to be shown on a return, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies. In turn, “underpayment” is defined by section 6664(a), which provides, in relevant part: SEC. 6664(a). Underpayment. — For purposes of this part, the term “underpayment” means the amount by which any tax imposed by this title exceeds the excess of— (1) the sum of— (A) the amount shown as the tax by the taxpayer on his return, plus (B) amounts not so shown previously assessed (or collected without assessment), over (2) the amount of rebates made. This “part” of the Code includes sections 6662 through 6664. Feller v. Commissioner Inapposite In this case we are not called upon to address whether the statute is clear on its face as to whether “the amount shown as the tax by the taxpayer on his return” takes into account the earned income tax credit, the additional child tax credit, or the recovery rebate credit. In Feller v. Commissioner, 135 T.C. 497, 508 (2010), we previously held that “Section 6664 is silent and ambiguous with respect to the issue before us; i.e., Congress has not directly addressed the meaning of the term ‘underpayment’ when a taxpayer has overstated withholding credits.” But in Feller the Court addressed the validity of a regulation that interpreted section 6664. In Feller the Court addressed the question of how overstated withholding credits under section 31 fit within the definition of an underpayment under section 6664. As is pertinent here, the Court found the definition of an underpayment to be ambiguous, at least insofar as overstated withholding credits are concerned. This determination of ambiguity was necessary to the Court’s analysis, because the Secretary had promulgated regulations specifically addressing the treatment of withholding credits. One such regulation, section 1.6664-2(c), Income Tax Regs., provides: (c) Amount shown as the tax by the taxpayer on his return — (1) Defined.' — -For purposes of paragraph (a) of this section, the amount shown as the tax by the taxpayer on his return is the tax liability shown by the taxpayer on his return, determined without regard to the items listed in paragraphs (b)(1), (2), and (3) of this section, except that it is reduced by the excess of— (i) The amounts shown by the taxpayer on his return as credits for tax withheld under section 31 (relating to tax withheld on wages) and section 33 (relating to tax withheld at source on nonresident aliens and foreign corporations), as payments of estimated tax, or as any other payments made by the taxpayer with respect to a taxable year before filing the return for such taxable year, over (ii) The amounts actually withheld, actually paid as estimated tax, or actually paid with respect to a taxable year before the return is filed for such taxable year. See sec. 1.6664-2(b)(1), (2), and (3), Income Tax Regs.; see also sec. 1.6664-2(g), Example (3), Income Tax Regs. The phrase “items listed in paragraphs (b)(1), (2), and (3) of this section” refers to amounts paid by or on behalf of the taxpayer, such as estimated taxes and withholding. When testing the validity of a regulation, we generally look to the two-part test established under Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). The first prong of that test is “whether Congress has directly spoken to the precise question at issue.” Id. at 842. If Congress has not spoken to the precise question at issue, then the Court must determine whether the regulation “is based on a permissible construction of the statute.” Id. at 843. Thus, when testing the validity of section 1.6664-2(c), Income Tax Regs., in Feller, the Court was first required to determine whether section 6664 has “spoken to the precise question at issue.” That question, as noted by the opinion of the Court in Feller, was “the meaning of the term ‘underpayment’ when a taxpayer has overstated withholding credits.” Feller v. Commissioner, 135 T.C. at 508. In this case, we are not addressing withholding credits. In contrast to withholding credits, the regulations under section 6664 fail to address either of the two questions that are relevant to the current dispute. First, they fail to address whether the earned income credit, additional child tax credit, and recovery rebate credit are taken into account when calculating the amount shown as the tax on the return. One could interpret this regulation as taking into account these credits only by relying on the canon expressio unius est exclusio alterius, discussed below — i..e., by specifically addressing withheld taxes and payments, one could infer that the Secretary intended that no adjustment be made for refundable tax credits. Even then, however, the regulations fail to address the second question: whether there can be a “negative tax”. Because the Secretary has not promulgated a regulation addressing how the refundable credits at issue here should be taken into account, we need not address whether the statute leaves room for agency interpretation. It follows that we are also not resolving the question of whether the Secretary may promulgate a regulation that is inconsistent with this Opinion.[5] And the mere fact that we devote these pages to interpreting the statute does not, by implication, mean that the statute is ambiguous. Whether a statute is ambiguous is determined not only from the language of the statute being considered, but also from the “language and design of the statute as a whole.” See, e.g., K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988). Thus, in looking beyond the language of section 6664(a)(1)(A) as part of our analysis, we are not answering the question of whether the statute is ambiguous. We are simply interpreting the statute. And to do so, we turn to principles of statutory construction. Reading Section 6664(a)(1)(A) in the Light of Section 6211(a)(1)(A) Returning to the definition of an underpayment, we note that the Code provides the following: SEC. 6664(a). Underpayment. — For purposes of this part, the term “underpayment” means the amount by which any tax imposed by this title exceeds the excess of— (1) the sum of— (A) the amount shown as the tax by the taxpayer on his return, plus (B) amounts not so shown previously assessed (or collected without assessment), over . (2) the amount of rebates made. A series of canons of statutory construction lead to the conclusion that refundable credits must be taken into account when determining the amount shown as the tax by the taxpayer but that those credits cannot reduce that amount below zero. Where the same words or phrase appear within a text, they are presumed to have the same meaning. Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433 (1932) (“Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.”); see also TG Mo. Corp. v. Commissioner, 133 T.C. 278, 296 (2009). The phrase “the amount shown as the tax by the taxpayer” appears three times in the Code. Two of those passages are related: the definition of a deficiency under section 6211 and the definition of an underpayment under section 6664.[6] Although not explicitly linked today, the definition of a deficiency under section 6211 and the definition of an underpayment under section 6664(a) are linked by history. As summarized in Feller v. Commissioner, 135 T.C. at 506, in 1989 several penalty provisions were consolidated into sections 6662 through 6665. Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, sec. 7721(a), 103 Stat. at 2395, 2399. The term “underpayment”, which had been defined in section 6653 before the 1989 amendments, was defined in section 6664(a) after the amendments. Before amendment, “underpayment” was defined with an explicit cross-reference to the definition of a deficiency. Specifically, section 6653 provided: SEC. 6653(c). Definition of Underpayment. — For purposes of this section, the term “underpayment” means— (1) Income, estate, gift, and certain excise taxes. — In the case of a tax to which section 6211 (relating to income, estate, gift, and certain excise taxes) is applicable, a deficiency as defined in that section H* $ ífc Thus, at one time, the terms “underpayment” and “deficiency” were coextensive. Although they are linked by history, the fact remains that in 1989 Congress uncoupled these terms. And although identical words are presumed to have the same meaning, the presumption “‘is not rigid’”. United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 213 (2001) (quoting Atl. Cleaners & Dyers, 286 U.S. at 433). But here, Congress expressly indicated that uncoupling these terms was not intended to remove their definitional nexus. Despite detaching the definition of an underpayment from the definition of a deficiency, Congress informed us that “the bill provides a standard definition of underpayment for all of the accuracy-related penalties. This standard definition is intended to simplify and coordinate the definitions in present law; it is not intended to be substantively different from present law.” H.R. Rept. No. 101-247, at 1394 (1989), 1989 U.S.C.C.A.N. 1906, 2864. But see H.R. Conf. Rept. No. 101-386, at 654 (1989), 1989 U.S.C.C.A.N. 3018, 3257. Given that sections 6211(a)(1)(A) and 6664(a)(1)(A) use the same phrase and that the two provisions are contextually and historically related, we turn to section 6211(a)(1)(A) to assist us in interpreting the provision before us. Credits Reduce Tax Shown on Return Before we reach the question of whether the three tax credits at issue can reduce the amount shown as tax below zero, we must first decide whether these credits reduce the amount shown as tax to any extent. Although section 6664 is silent on this point, section 6211 is instructive. Section 6211 expressly excludes certain credits from the amount shown on the return as the tax by the taxpayer, which is in turn used to calculate the amount of a deficiency. Specifically, section 6211(b) provides: SEC. 6211(b). Rules for Application of Subsection (a). — For purposes of this section— (1) The tax imposed by subtitle A and the tax shown on the return shall both be determined without regard to payments on account of estimated tax, without regard to the credit under section 31, without regard to the credit under section 33, and without regard to any credits resulting from the collection of amounts assessed under section 6851 or 6852 (relating to termination assessments)![7]! Because the Code specifies that certain credits should be disregarded when determining the tax shown on the return, we can infer that other credits should not be disregarded. Under the canon expressio unius est exclusio alterius, if a statute provides specific exceptions to a general rule, we may infer that Congress intended to exclude any further exceptions. Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993); see also Catterall v. Commissioner, 68 T.C. 413, 421 (1977), aff’d sub nom. Vorbleski v. Commissioner, 589 F.2d 123 (3d Cir. 1978). This is not a rigid rule and will not apply if the result “is contrary to all other textual and contextual evidence of congressional intent.” Burns v. United States, 501 U.S. 129, 136 (1991); see also Neuberger v. Commissioner, 311 U.S. 83, 88 (1940). In this instance we see no evidence of a contrary congressional intent. Whether we review the context surrounding the definition of an underpayment under section 6664 or the definition of a deficiency under section 6211, the statute is silent as to the treatment of the refundable tax credits at issue here. In the absence of anything showing a contrary congressional intent, the canon expressio unius est exclusio alterius applies. Because Congress expressly chose to disregard certain credits when determining the amount shown as the tax by the taxpayer on his return when calculating a deficiency, it follows that other credits should be taken into account to reduce the amount so shown. Because the phrase “the amount shown as the tax by the taxpayer” appears in both sections, 6211 and 6664, we likewise conclude that the amount shown as the tax by the taxpayer on his return when calculating an underpayment should be reduced by refundable credits. Although not specifically addressed in our prior opinions, this holding is consistent with many previous opinions of this Court, including Feller, where the claiming of a credit to which a taxpayer was not entitled resulted in the imposition of a penalty. Most credits are identified in the Code as a “credit against the tax imposed”.[8] Petitioners attach special meaning to the phrase “credit against the tax” and infer from those words that a credit against the tax is a payment and not part of the tax itself. Whether a particular tax credit is a refundable credit or not, the Code uses this same phrase “credit against the tax”. Compare sec. 32(a)(1) (earned income credit applied as a “credit against the tax imposed”) with sec. 38(a) (general business credit applied as a “credit against the tax imposed”). And we have imposed penalties on disallowed credits against the tax under many provisions.[9] In doing so, we necessarily reduced the amount shown as tax by the reported credit against the tax. Nothing in the Code suggested that such credits should have been removed from the computation, and nothing in the Code suggests that we should do so now. No Negative Tax Having concluded that credits can reduce the amount shown as tax on the return, we must next address the Clinic’s argument that the earned income credit, additional child tax credit, and recovery rebate credit cannot reduce the amount shown as the tax on the return below zero. We again turn to canons of statutory construction. Section 6664(a) is silent on the issue of whether the amount shown as the tax on the return can be negative. But as noted previously, where the same phrase appears multiple times in the same statutory scheme, we can look to those other appearances to help discern the meaning. Conveniently, section 6211 directly addresses the question of a negative tax. Section 6211(b)(4) provides: SEC. 6211(b). Rules for Application of Subsection (a). — For purposes of this section — • ‡ * (4), For purposes of subsection (a)— (A) any excess of the sum of the credits allowable under sections 24(d), 32, 34, 35, 36, 53(e), and 6428 over the tax imposed by subtitle A (determined without regard to such credits), and (B) any excess of the sum of such credits as shown by the taxpayer on his return over the amount shown as the tax by the taxpayer on such return (determined without regard to such credits), shall be taken into account as negative amounts of tax. More simply stated, any excess of the refundable credits claimed as compared to the amount to which the taxpayer was entitled is treated as a negative tax. We can infer from this provision that the specified refundable credits would not be considered a negative tax but for this provision. In this instance, the surplusage canon leads us to conclude that excess credits are not otherwise a negative tax. Under the surplusage canon we are to give effect to every provision Congress has enacted. United States v. Menasche, 348 U.S. 528, 538-539 (1955) (“‘The cardinal principle of statutory construction is to save and not to destroy.’ Labor Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 30 (1937). It is our duty ‘to give effect, if possible, to every clause and word of a statute,’ Inhabitants of Montclair Tp. v. Ramsdell, 107 U.S. 147, 152 (1883), rather than to emasculate an entire section[.]”); see also Tucker v. Commissioner, 135 T.C. 114, 154 (2010) (“[W]e decline to read words out of the statute; rather, we attempt to give meaning to every word that Congress enacted[.]”). If, as respondent suggests, these credits are considered a negative tax, then section 6211(b)(4) would be mere surplusage; it would be wholly unnecessary. To give section 6211(b)(4) any meaning, we must assume that, in determining the amount shown as the tax, the specified credits would not be considered a negative tax but for that provision. We then use this conclusion to inform our views on the use of the word “underpayment” in section 6664. Based on the negative tax provision of section 6211(b)(4), we conclude that these credits do not yield a negative tax for purposes of defining an underpayment under section 6664(a)(1)(A). We return to our premise that, because section 6664(a)(1)(A) uses the same phrase “the amount shown as the tax by the taxpayer” as section 6211(a), we should interpret it consistently with section 6211. And we have concluded that, but for section 6211(b)(4), the specified refundable credits would not yield a negative tax for the amount shown as the tax by the taxpayer. Thus, we must likewise conclude that these refundable credits would not yield a negative tax for the amount shown as the tax under section 6664 unless there is a counterpart to section 6211(b)(4). In turning to section 6664, we find no counterpart to section 6211(b)(4). Accordingly, excess earned income credits, additional child tax credits, and recovery rebate credits do not result in a negative tax for the amount shown as the tax by the taxpayer on his return. We note that our conclusion breaks the historical link between the definitions of a deficiency and an underpayment; however, it was Congress that made that break. As we previously noted, the definition of an underpayment was linked to the definition of a deficiency until 1989. In 1988 Congress amended section 6211(b)(4) to specifically provide that certain refundable credits could he taken into account as negative amounts of tax. Technical and Miscellaneous Revenue Act of 1988, Pub. L. No. 100-647, sec. 1015(r)(2), 102 Stat. at 3572.[10] Because this occurred when the definition of an underpayment was linked to the definition of a deficiency, it meant that those credits would be considered a negative tax for the definition of an underpayment as well. We previously noted that Congress expressed the view that uncoupling the link between sections 6664(a)(1)(A) and 6211(a)(1)(A) was not intended to “substantively” alter the definition of an underpayment. H.R. Rept. No. 101-247, supra at 1394, 1989 U.S.C.C.A.N. at 2864. But as was noted in Feller, the legislative history states that “the new definition was intended to ‘simplify and coordinate’ diverse ‘underpayment’ definitions under former law. And in fact the new ‘underpayment’ definition in section 6664(a) differs in various ways from the old ‘underpayment’ definitions which it replaced.” Feller v. Commissioner, 135 T.C. at 514-515 (Thornton, J., concurring) (quoting H.R. Rept. No. 101-247, supra at 1394, 1989 U.S.C.C.A.N. at 2864). One of those differences is that Congress did not include a counterpart to section 6211(b)(4) in section 6664(a). If this is not what Congress intended, it is not for the Court to reform the statute. Verito v. Commissioner, 43 T.C. 429, 443 (1965) (“We were not given the responsibility of writing statutes, but we do have the responsibility of interpreting them as we find them.”). Moreover, Congress has made it clear in analogous circumstances when it intended refundable credits to be taken into account. We have already shown how Congress addressed a “negative tax” in section 6211. Likewise, in the preparer penalty of section 6694, Congress made it clear that refunded amounts like the refundable credits at issue here should be taken into account for purposes of determining an underpayment. Section 6694 imposes a penalty on a tax return preparer who prepares a return with an “unreasonable position” as that term is defined in section 6694(a)(2). For the penalty to apply, there must be an “understatement of liability”. Sec. 6694(a)(1)(A). Congress, however, made it clear that an understatement of liability includes a situations where a return has overstated credits that yield a refund. Specifically, section 6694(e) provides in relevant part: SEC. 6694(e). UNDERSTATEMENT OF LIABILITY Defined. — For purposes of this section, the term “understatement of liability” means any understatement of the net amount payable with respect to any tax imposed by this title or any overstatement of the net amount creditable or refundable with respect to any such tax. * * * By including the phrase “or any overstatement of the net amount creditable or refundable”, Congress explicitly defined “understatement” for preparer penalty purposes to include refundable credits. Congress could have similarly taken such credits into account under the definition of an underpayment under section 6664(a), but it did not. Rule of Lenity Beyond the previously discussed canons of statutory construction on which we rely, our Opinion is further supported by another canon: the rule of lenity. The rule of lenity is an “ancient maxim” that “is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment.” United States v. Wiltberger, 18 U.S. 76, 95 (1820). Thus, under the rule of lenity statutes that impose a penalty are to be construed in favor of the more lenient punishment. Black’s Law Dictionary 1449 (9th ed. 2009). And although often considered in the criminal context, the rule of lenity has been applied in the civil context and specifically with regard to civil tax penalties. In Commissioner v. Acker, 361 U.S. 87 (1959), the IRS sought to impose two penalties on a taxpayer as a result of the taxpayer’s failure to file a declaration of estimated income tax. One penalty was for a failure to file the declaration. The other, however, was for a “substantial underestimate of estimated tax”. The latter penalty came about because, by regulation, the failure to file a declaration of estimated tax was deemed to be an estimate of zero. In rejecting the latter penalty, the Supreme Court stated: “We are here concerned with a taxing Act which imposes a penalty. The law is settled that ‘penal statutes are to be construed strictly,’ and that one ‘is not to be subjected to a penalty unless the words of the statute plainly impose it’.” Id. at 91 (fn. ref. omitted) (quoting FCC v. Am. Broadcasting Co., 347 U.S. 284, 296 (1954), and Keppel v. Tiffin Sav. Bank, 197 U.S. 356, 362 (1905)). Here, the words of the relevant statutes do not plainly impose a penalty on refunds resulting from overstated earned income credits, additional child tax credits, or recovery rebate credits. Because the penalty is not plainly imposed on the refundable portion of the credits, the rule of lenity further confirms what we have already concluded: that section 6662 does not impose a penalty on the refundable portion of erroneously claimed earned income credits, additional child tax credits, and recovery rebate credits. Additional Issues Raised by Respondent We have concluded that the earned income credit, additional child tax credit, and recovery rebate credit can be taken into account to reduce the amount shown as tax on the return, but not below zero. We turn to two additional points raised by respondent. Auer Deference Respondent urges us to apply Auer deference to his interpretation on brief of the phrase “the amount shown as the tax by the taxpayer on his return”. See Auer, 519 U.S. 452. When applying Auer deference, a court defers to an agency’s interpretation of its own ambiguous regulation, even where that interpretation appears on brief. Chase Bank USA, N.A. v. McCoy, 562 U.S. _, _, 131 S. Ct. 871, 880 (2011). Judicial deference need not give way to judicial abdication. The regulations are silent on the issue before us, and respondent’s position on brief is at least arguably inconsistent with the statute. Although we do not in this instance defer to respondent’s interpretation on brief, we note that our interpretation of the statute is not inconsistent with the regulation. To the extent the regulation implies that refundable credits should be taken into account in determining the amount shown as the tax, we have done so. But, consistent with the statutory scheme, we have done so only to the extent that it does not give rise to a negative tax. On this, the regulation is silent. Gap in the Penalty Regime Respondent also asserts that if his position is not adopted there would be a gap in the penalty regime. Respondent’s point is not well taken for at least three reasons. First, to the extent respondent’s claim is that a claim of excess refundable credits could not be penalized under our holding, respondent is mistaken. To the extent the credits reduce the amount of tax shown on the return, the disallowance of those credits will result in an increased underpayment upon which a section 6662 accuracy-related penalty could be imposed. More simply stated, the portion of a disallowed credit that reduced a tax liability may be subject to an accuracy-related penalty. Second, to the extent an improperly claimed credit resulted in a refund, it may be subject to a penalty under section 6676. In 2007 Congress added section 6676, which imposes a 20% penalty on an erroneous claim for refund. Small Business and Work Opportunity Tax Act of 2007, Pub. L. No. 110-28, sec. 8247(a), 121 Stat. at 204. An erroneous claim for refund is any claim for refund of an “excessive amount”, which is defined as “the amount by which the amount of the claim for refund or credit for any taxable year exceeds the amount of such claim allowable”. Sec. 6676(b). Such a penalty might have applied here, if respondent had asserted it. Thus, there is no gap in the penalty regime. To the extent an erroneously claimed credit reduces a tax liability, it may be subject to an accuracy-related penalty under section 6662; to the extent that credit generates a refund, it may be subject to a penalty under section 6676. And third, respondent is incorrect that there would be a gap in the penalty regime insofar as an erroneously claimed earned income tax credit is concerned. In 1997 Congress carved out a separate sanction for taxpayers who improperly claim the earned income tax credit. See sec. 32(k) (added by the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 1085, 111 Stat. at 955). Specifically, section 32(k) provides that a false claim to the earned income credit in one tax year results in the denial of the earned income credit in the next two tax years “[If] there was a final determination that the taxpayer’s claim of credit * * * was due to reckless or intentional disregard of rules and regulations”.[11] And it appears that Congress intended that the two-year bar be in lieu of any other monetary sanctions. For example, the penalty under section 6676 for an erroneous claim for refund specifically excludes a claim for refund relating to an erroneous earned income credit. Conclusion In the case of an underpayment due to negligence or a substantial understatement of income tax, among other things, section 6662 imposes an accuracy-related penalty on the underpayment. Section 6664(a) defines the term “underpayment” in part by reference to the amount shown as the tax by the taxpayer on his return. The earned income credit, additional child tax credit, and recovery rebate credit all reduce the amount shown as the tax by the taxpayer on his return, but not below zero. To reflect the foregoing and concessions, Decision will be entered under Rule 155. Reviewed by the Court. Thornton, Vasquez, Gale, Wherry, Kroupa, Holmes, Paris, Kerrigan, and Lauber, JJ., agree with this opinion of the Court. Foley, J., did not participate in the consideration of this opinion. Unless otherwise noted, all references to sections are to the Internal Revenue Code of 1986, as in effect for the 2008 tax year. All Rule references are to the Tax Court Rules of Practice and Procedure. The complete name of Form 4852 is Substitute for Form W-2, Wage and Tax Statement, or Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. Even after the parties’ stipulations, one issue remains unresolved (in addition to the penalty issue addressed in this Opinion). By stipulation, the parties agree that petitioners did not have sufficient earned income to qualify for the additional child tax credit or the recovery rebate credit. The earned income thresholds for claiming the additional child tax credit and the recovery rebate credit are $8,500 and $3,000, respectively. See sec. 24(d)(l)(B)(i) (additional child tax credit); sec. 6428(b)(2)(A) (recovery rebate credit). Respondent assumes that this stipulation eliminated the income reported on line 7, apparently predicated on the incorrect notion that all items reported on line 7 are earned income. Petitioners make no such assumption; they assume that the $17,200 remains on line 7. We need not resolve the parties’ confusion regarding their own stipulation. It is possible to have line 7 income that is not earned income, such as scholarship income that is not reported on a Form W — 2. See IRS Publ. 596, at 22 (2008). The two possible interpretations of their stipulation are (1) petitioners had $17,200 of line 7 unearned income, or (2) they had no line 7 income. Under either scenario, petitioners’ taxable income is zero, because their income would be fully offset by the standard deduction coupled with dependency exemptions. Section 6402(a) provides that the Secretary may credit the amount of an “overpayment” against the tax liability of the person making the overpayment‘.and must refund any balance to the person. Section 6401(b) provides that if the amount of specified credits (including the three credits petitioners, claimed on their 2008 return) exceed the tax imposed by subtitle A (as reduced by other nonrefundable credits), the amount of such excess is considered an overpayment. If the Secretary should promulgate such a regulation, we may be called upon to revisit that question, but judicial restraint dictates that we not resolve that question now. LTV Corp. v. Commissioner, 64 T.C. 589, 595 (1975) (“[C]ourts will not gratuitously decide complex issues that cannot affect the disposition of the case before them.”). The third passage is section 1314 (amongst the mitigation provisions of sections 1311 through 1314), and in that instance, this phrase appears only in connection with a cross-reference to section 6211. This section was also present in substantially the same form before the 1989 amendments that removed the express cross-reference from the definition of an underpayment to the definition of a deficiency. See sec. 21 (expenses for household and dependent care services necessary for gainful employment); sec. 22 (credit for the elderly and the permanently and totally disabled); sec. 23 (adoption expenses); sec. 24 (child tax credit); sec. 25 (interest on certain home mortgages); sec. 25A (hope and lifetime learning credits); sec. 25B (elective deferrals and IRA contributions by certain individuals); sec. 25C (nonbusiness energy property); sec. 25D (residential energy efficient property); sec. 27 (taxes of foreign countries and possessions of the United States; possession tax credit); sec. 30 (credit for qualified electric vehicles); sec. 30A (Puerto Rico economic activity credit); sec. 30B (alternative motor vehicle credit); sec. 30C (alternative fuel vehicle refueling property credit); sec. 38 (general business credit); sec. 53 (credit for prior year minimum tax liability); sec. 54 (credit to holders of clean renewable energy bonds). In using that same phrase, the general business credit under section 38 brings along with it more than 30 other credits that must also be considered a “credit against the tax”. See sec. 38(b). See, e.g., Carlebach v. Commissioner, 139 T.C. 1 (2012) (imposing a penalty on disallowed child care credit under section 21 and child tax credit under section 24); Langley v. Commissioner, T.C. Memo. 2013-22 (hope and lifetime learning credits under section 25A); Ellis-Babino v. Commissioner, T.C. Memo. 2012-127 (general business credit under section 38, including the increasing research activities credit under section 41); A.J. Concrete Pumping, Inc. v. Commissioner, T.C. Memo. 2001-42 (general business credit under section 38, including the investment tax credit under section 46). Of the credits at issue here, only the earned income credit was included in'section 6211(b)(4) in 1988. In 1998 Congress added the additional child tax credit to the Code, and in 2000 it incorporated the credit in the negative tax provision of section 6211(b)(4). Consolidated Appropriations Act, 2001, Pub. L. No. 106-554, sec. 1(a)(7), 114 Stat. at 2763 (2000) (amending sec. 6211(b)(4)); Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 1.01(a), 111 Stat. at 788 (adding sec. 24). In 2008 Congress added the rebate recovery credit to the Code and incorporated the credit in the negative tax provision of section 6211(b)(4). Economic Stimulus Act of 2008, Pub. L. No. 110-185, sec. 101(b)(1), 122 Stat. at 615 (amending sec. 6211(b)(4)); id. sec. 101(a), 122 Stat. at 613 (amending sec. 6428(a)). The period of disallowance is 10 years if the claim of credit is due to fraud.