T.C. Memo. 2014-87

UNITED STATES TAX COURT

ALEXANDER F. GORALSKI AND KATHLEEN R. PERILLO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15415-12.                        Filed May 15, 2014.

<u>Frank Agostino</u>, Francis Cannataro (specially recognized), <u>John Genova</u>,

and Rafael Lamberti (specially recognized), for petitioners.

<u>Eugene A. Kornel</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DEAN, <u>Special Trial Judge</u>:  Respondent determined a deficiency of $7,500

in petitioners' 2008 Federal income tax and an accuracy-related penalty of $1,500

[*2] under section 6662(a).[1]  The issues for decision are whether petitioners are entitled to the first-time homebuyer credit for 2008 pursuant to section 36 and are liable for the accuracy-related penalty under section 6662(a).

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by reference.  Petitioners resided in New York when they filed their petition.

Alexander Goralski (petitioner) grew up in New York and lived with his parents in a house in Elmsford, New York (Elmsford home).  Petitioner's mother continued to live at the Elmsford home until she passed away in February 2006.  At the time of his mother's passing, petitioner's sister lived in the Elmsford home, while petitioner lived in a New York City apartment (NYC apartment).

Petitioner received his bachelor's degree in finance and accounting from Pace University in 2004 and was working as a licensed certified public accountant in New York during the year at issue.  While attending Pace University from 1999 through 2003 petitioner resided at the Pace dormitories.  He later moved into the

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] NYC apartment. Petitioner resided at the NYC apartment until he moved to the Elmsford home in 2006.

Petitioner's sister was deeply affected by the death of their mother, so in April 2006 petitioner moved back to the Elmsford home (and moved all of his belongings into the Elmsford home) to assist his sister with her grieving and recovery. He continued to work in New York City and maintained his social circles and friends in New York City. While living at the Elmsford home, petitioner slept at the home and used the address of the Elmsford home for Internal Revenue Service filings and other mailings, but at times he had packages mailed to his work place and to homes of other parties with whom he had relationships. By early 2007 petitioner decided to look for a place closer to that of his then girlfriend, now his wife, Kathleen Perillo, and in May 2007 petitioner moved into an apartment in Yonkers, New York. During the time that petitioner resided at the Elmsford home, he did not own or rent any other homes or property.

In February 2007 the Elmsford home was deeded to petitioner and his sister as tenants-in-common by their mother's estate.

In May 2008 petitioner purchased a condominium in Yonkers, New York (condo), and moved there. When petitioners filed their 2008 income tax return,

**[*4]** they claimed a first-time homebuyer credit (FTHBC) in connection with the purchase of the condo.

Respondent issued petitioners a notice of deficiency dated March 12, 2012, disallowing the claimed FTHBC and determining an accuracy-related penalty of $1,500.

OPINION

Burden of Proof

As a preliminary matter, we consider petitioners' contention that the burden of proof has shifted to respondent pursuant to section 7491(a). Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving it incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 7491(a)(1) provides an exception that shifts the burden of proof to the Commissioner as to any factual issue relevant to a taxpayer's liability for tax if: (1) the taxpayer introduces credible evidence with respect to that issue; and (2) the taxpayer satisfies certain other conditions, including substantiation of any item and cooperation with the Government's requests for witnesses, documents, other information, and meetings. Sec. 7491(a)(2); see also Rule 142(a)(2). The taxpayer bears the burden of proving that the taxpayer has met the requirements of section 7491(a). Rolfs v. Commissioner,

[*5] 135 T.C. 471, 483 (2010), aff'd, 668 F.3d 888 (7th Cir. 2012). Because we decide the factual issues in the instant case on the preponderance of the evidence, the allocation of the burden of proof is immaterial. See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008).

FTHBC

Section 36(a) allows "an individual who is a first-time homebuyer of a principal residence in the United States" to claim a tax credit during the year the residence is purchased. Section 36(c)(1) defines a "first-time homebuyer" as "any individual if such individual (and if married, such individual's spouse) had no present ownership interest in a principal residence during the 3-year period ending on the date of the purchase of the principal residence to which this section applies."

Petitioners are eligible as first-time homebuyers if neither Ms. Perillo nor petitioner had a present ownership interest in a principal residence after April 17, 2005, and before April 18, 2008. See Foster v. Commissioner, 138 T.C. 51, 52-53 (2012). For purposes of the FTHBC, section 36(c)(2) provides that the term "principal residence" has the same meaning as in section 121.

In general, whether property is used by a taxpayer as the taxpayer's residence depends upon all the facts and circumstances. Sec. 1.121-1(b), Income

[*6] Tax Regs.  A property used by a taxpayer as the taxpayer's residence may include a houseboat, a house trailer, or the house or apartment that the taxpayer is entitled to occupy as a tenant-stockholder in a cooperative housing corporation. Sec. 1.121-1(b)(1), Income Tax Regs.  A taxpayer's residence is "'the place where * * * [he] actually lives or has his home.'"  Stolk v. Commissioner, 40 T.C. 345, 351 (1963) (quoting Webster's Unabridged Third New International Dictionary), aff'd, 326 F.2d 760 (2d Cir. 1964).

Whether a taxpayer uses a property as his or her "principal" residence depends upon all the facts and circumstances when a taxpayer maintains more than one residence.  See sec. 1.121-1(b)(2), Income Tax Regs.  Ordinarily, the taxpayer's principal residence (if the taxpayer maintains more than one residence) is the property the taxpayer uses during most of the year.  See id.  Section 1.121-1(b)(2), Income Tax Regs., provides:

> (2) Principal residence. * * * In addition to the taxpayer's use of the property, relevant factors in determining a taxpayer's principal residence, include, but are not limited to-
>
> (i) The taxpayer's place of employment;
>
> (ii) The principal place of abode of the taxpayer's family members;

**[*7]**        (iii) The address listed on the taxpayer's federal and state tax returns, driver's license, automobile registration, and voter registration card;

   (iv) The taxpayer's mailing address for bills and correspondence;

   (v) The location of the taxpayer's banks; and

   (vi) The location of religious organizations and recreational clubs with which the taxpayer is affiliated.

Petitioner lived in only one residence at the time that he lived at the Elmsford home.  Petitioner asserts, however, that the Court should look to the facts and circumstances test, as if he had maintained more than one residence, in determining whether the Elmsford home was his principal residence.  Under the facts and circumstances test, petitioner asserts that because he did not intend to maintain the Elmsford home as his principal residence, it was not his principal residence.  Petitioner cites several cases in support of his argument that an intent to not maintain a dwelling as a principal residence permanently should be controlling in this case.

The taxpayer in Woods v. Commissioner, 137 T.C. 159 (2011), had purchased a home that was undergoing renovations, and consequently he was unable to occupy it.  During the renovations the taxpayer first lived in a rental unit and then moved in with his daughter.  During all relevant periods the taxpayer

**[*8]** worked near his newly purchased home, and he intended to occupy the home as his principal residence after the renovations.  The Court concluded that the taxpayer intended to use the home as his primary residence and therefore the taxpayer was entitled to the FTHBC.

The taxpayers in Foster sold a home in June 2007 and purchased a home in July 2009, claiming the FTHBC.  The taxpayers claimed that they had not resided in the first home since February 2006.  However, one or both of the taxpayers continued to maintain a driver's license with the old home's address, they kept the home fully furnished, they hosted family parties at the old home, they continued to have bills and correspondence sent to the old address, they kept personal belongings at the old home, and they frequently stayed overnight at the old home. The Court concluded that under the facts and circumstances, the old home was the taxpayers' principal residence in July 2006.

Petitioner argues that Foster is instructive here because he did not live in the Elmsford home for very long and lived in the Elmsford home only because his mother had passed away.  Petitioner argues that, as in Woods, intent is the most important factor, and he did not intend to use the Elmsford home permanently. Petitioner contends that under the facts and circumstances, the Elmsford home was not his principal residence because:  (1) the Elmsford home increased his commute

**[*9]** time since it was further away from his place of employment, (2) the move was necessary because he needed to assist his sister while she was grieving the loss of their mother, (3) he purchased the condo, in part, because he thought he was eligible for the credit and he and his wife planned to make the home their principal residence, (4) he desired to live in his new home but was unable to because specific circumstances made acquiring a principal residence impractical until a later date, and (5) he did not furnish the Elmsford home. Petitioner further argues that he did not act like an owner of a principal residence. Petitioner alleges that he was forced to forgo renewing his lease on the NYC apartment and move into the Elmsford home and that it was a transitional living arrangement that could change at any time if his sister were to improve.

Petitioner's arguments that we should look to the facts and circumstances and that the above-referenced cases support his position that the Elmsford home was not his "principal" residence are without merit.

In <u>Gates v. Commissioner</u>, 135 T.C. 1 (2010), this Court looked to apply accepted principles of statutory construction to ascertain congressional intent with respect to the definition of "principal residence". It is a well-established rule of construction that if a statute does not define a term, the term is given its ordinary meaning. See <u>Perrin v. United States</u>, 444 U.S. 37, 42 (1979). It is also well

**[\*10]** established that a court may look to sources such as dictionaries for assistance in determining the ordinary meaning of a term.  See <u>Muscarello v. United States</u>, 524 U.S. 125, 127-132 (1998).  We look to legislative history to ascertain Congress' intent if the statute is ambiguous.  See <u>Burlington N. R.R. Co. v. Okla. Tax Comm'n</u>, 481 U.S. 454, 461 (1987).

The Court in <u>Gates</u> looked to the American Heritage Dictionary of the English Language 1395 (4th ed. 2000), which defines "principal" as "[f]irst, highest or foremost in importance, rank, worth or degree; chief."  The Court found that the combined term "principal residence" was not clear and unambiguous and then turned to legislative history to ascertain Congress' intent regarding the proper tax treatment of the sale of a principal residence.  The Court focused on the meaning of residence and property and did not inquire as to congressional intent with respect to the term "principal".

However, in <u>Commissioner v. Soliman</u>, 506 U.S. 168 (1993), the Supreme Court noted that in deciding whether a location is "the principal place of business" the commonsense meaning of "principal" suggests that a comparison of locations must be undertaken.  <u>Id.</u> at 174.  The Court further noted that this view is confirmed by the definition of "principal", which means 'most important, consequential, or influential'.  Merriam Webster's Collegiate Dictionary 926 (10th

[*11] ed. 1997). "Courts cannot assess whether any one business location is the 'most important, consequential, or influential' one without comparing it to all the other places where business is transacted." Commissioner v. Soliman, 506 U.S. at 174.

Likewise, a court cannot consider whether a residence is "most important, consequential, or influential" without comparing it to another residence. Therefore, regardless of whether the term "principal" is ambiguous, we need not decide that here because there was no residence with which to compare the Elmsford home. Because there was no other residence, we need not engage in a facts and circumstances test in determining whether it was petitioner's "principal" residence.[2]

Petitioner lived at the Elmsford home and slept there during the relevant period. Petitioner argues that he did not intend to remain there; however, there was no other place in which he could have resided or another residence to which to return. Regardless of how little time petitioner spent at the Elmsford home or

---

[2]Because we conclude that we need not look to the facts and circumstances of this case in determining whether the Elmsford home was petitioner's "principal" residence, we need not address petitioner's argument that suggests "principal" is ambiguous under the facts and circumstances analysis.

[*12] whether he intended to live elsewhere, he resided at the Elmsford home and did not maintain any other residence during the relevant period.

Petitioner had an ownership interest in the Elmsford home when it was deeded to him and his sister in February 2007, and it was his only and thus his principal residence. Accordingly, petitioner is not entitled to the FTHBC for 2008.

Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a penalty of 20% of the portion of an underpayment of tax attributable to the taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax. "Negligence" includes any failure to make a reasonable attempt to comply with the Code, including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A "substantial understatement" includes an understatement of income tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. See sec. 6662(d); sec. 1.6662-4(b), Income Tax Regs.

The section 6662(a) accuracy-related penalty does not apply with respect to any portion of an underpayment if the taxpayer proves that there was reasonable cause for such portion and that he acted in good faith with respect thereto.

[*13] Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess the proper tax liability; the knowledge and the experience of the taxpayer; and any reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the taxpayer's effort to assess the taxpayer's proper tax liability. Id.

Petitioner lived in the Elmsford home at a difficult time after his mother's passing. His sister was experiencing difficulty with her mother's loss, and petitioner felt that in order to support his sister, he should stay at the Elmsford home. Petitioner credibly testified that it was not a permanent situation and that although he was living at the residence and did not have another residence, he intended to move out of the Elmsford home, which he did when he secured an apartment in New York in May 2007.

The Court is satisfied that under the circumstances of this case, petitioner acted with good faith and had reasonable cause for believing that he was entitled to the FTHBC. Petitioner, though he is an accountant, is not a lawyer. Although he owned a home as a tenant-in-common, he did not purchase the home; it was acquired as a result of his mother's passing, and he researched the relevant law

**[\*14]** before claiming the credit to ensure he was entitled to it. Petitioner credibly testified that he never intended to make the Elmsford home his principal residence. Given the foregoing, the Court finds that there was an honest misunderstanding of law that was reasonable in the light of all the facts and circumstances, including petitioner's experience, knowledge, and education. See sec. 1.6664-4, Income Tax Regs. Accordingly, the Court does not sustain respondent's imposition of the accuracy-related penalty under section 6662(a).[3]

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued, and decision will be entered for respondent as to the deficiency and for petitioners as to the accuracy-related penalty under section 6662(a)</u>.

---

[3]Because the Court does not sustain the imposition of the accuracy-related penalty, we need not discuss how the accuracy-related penalty might be calculated in the case of a disallowed FTHBC. See generally Rand v. Commissioner, 141 T.C. ___ (Nov. 18, 2013).