T.C. Memo. 2016-101

UNITED STATES TAX COURT

NICHOLAS KAVUMA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13825-13.                    Filed May 23, 2016.

Nicholas Kavuma, pro se.

<u>Sharyn Ortega</u> and <u>Kimberly A. Kazda</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal

income tax for 2008, 2009, 2010, and 2011 of $27,892, $34,334, $28,532, and

$4,747, respectively, additions to tax under section 6651(a)(1)[1] for those same

_____

[1]All section references are to the Internal Revenue Code of 1986, as in

(continued...)

**[*2]** years of $6,973, $7,471, $5,160, and $373,[2] respectively, and accuracy-related penalties for 2008, 2009, and 2010 of $5,578, $6,866, and $5,706, respectively. The issues for decision are:[3]

(1) whether petitioner had unreported income for 2008 and 2011 as respondent determined;

(2) whether petitioner is entitled to deductions claimed on Schedules C, Profit or Loss From Business, for expenses for 2008, 2009, 2010, and 2011 in amounts greater than those respondent allowed;

(3) whether petitioner is liable for additions to tax for 2008, 2009, 2010, and 2011; and

(4) whether petitioner is liable for accuracy-related penalties for 2008, 2009, and 2010.

---

[1](...continued)
effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

[2]The cover page of the notice of deficiency indicates that respondent determined a $373 accuracy-related penalty instead of an addition to tax in that amount for 2011. But the contents of the notice of deficiency indicate that respondent determined an addition to tax rather than an accuracy-related penalty, and that was respondent's position at trial.

[3]Respondent also made computational adjustments to petitioner's self-employment tax for each year, sec. 36A credits for 2009 and 2010, and sec. 32 credits for 2010 and 2011.

[*3]                     FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of

facts and the accompanying exhibits are incorporated herein by this reference.  At

the time the petition was filed petitioner resided in California.

Petitioner was a licensed vocational nurse (LVN) during all the years at

issue and worked in some instances as an independent contractor.  During the

years at issue he maintained bank accounts at Bank of America and at Washington

Mutual (which was acquired by Chase) where he deposited funds.  Petitioner made

over $100,000 of deposits into these accounts in 2008 and over $46,000 in 2011.

Petitioner filed Federal income tax returns for 2008, 2009, 2010, and 2011.

On the returns he reported gross income on Schedules C of $81,048, $93,692,

$84,010, and $1,955 for 2008, 2009, 2010, and 2011, respectively, and claimed

deductions for Schedule C expenses of $82,134, $99,718, $87,089, and $16,937

for 2008, 2009, 2010, and 2011, respectively.

Respondent subsequently examined each return.  Petitioner failed to provide

respondent's revenue agent with any records to substantiate the income he

reported on his returns or the expenses underlying deductions he claimed.  The

revenue agent issued summonses to Bank of America and Washington

Mutual/Chase for records pertaining to petitioner's bank accounts.  The revenue

[*4] agent performed a bank deposits analysis based on the summoned bank records, and after reviewing the bank records, characterized deposits that petitioner made in 2008 and 2011 as follows:

| Category | 2008 | 2011 |
|---|---|---|
| Other income | $6,310 | $2,076 |
| Schedule C income | 98,527 | 12,200 |
| Rent | 7,641 | --- |
| Nontaxable | 2,474 | 5,532 |
| Loan/misc | 10,000 | 400 |
| Wages | --- | 19,811 |
| Transfers (between accounts) | 366 | 6,207 |
| Total deposits | 125,318 | 46,226 |

The deposits characterized as rent represented checks made out to petitioner and deposited by him that had the word "rent" entered in the check's memo line.

Bank statements issued by Bank of America and Washington Mutual/Chase during the years at issue are addressed to petitioner at a La Verne, California, address. Petitioner reported a home address in Greenfield, California, on his 2008 and 2009 tax returns and in Delano, California, on his 2010 tax return. Checks in petitioner's bank records issued in 2009 by "Solvere National Medical Registry

[*5] Inc." and Federal and State tax refund checks issued in 2010 are addressed to the Greenfield address that he used on his 2008 and 2009 returns.

Respondent subsequently issued a notice of deficiency to petitioner for his 2008, 2009, 2010, and 2011 taxable years. Respondent disallowed deductions for all Schedule C expenses reported for all years except a $1,560 expense for 2011. Respondent also determined that petitioner had unreported Schedule C gross receipts or sales of $9,218 and unreported rental income of $7,554 for 2008 and unreported Schedule C gross receipts or sales of $10,245 for 2011. Respondent also determined that petitioner was liable for additions to tax for all these years and accuracy-related penalties for 2008, 2009, and 2010. Respondent also made computational adjustments, including disallowance of a refundable $267 making work pay credit and a refundable $457 earned income credit pertaining to petitioner's 2010 taxable year.

Petitioner filed a timely petition with the Court seeking redetermination of the deficiencies, additions to tax, and accuracy-related penalties.

At trial petitioner asserted that he had not received respondent's bank deposits analysis before trial. The Court thereupon granted petitioner additional time to review the bank deposits analysis and recalled the case for a second trial setting approximately eight weeks later, at which time petitioner offered no

**[*6]** testimony or evidence to dispute respondent's bank deposits analysis. The Court thereupon closed the record.[4]

OPINION

Unreported Income

Overview

Section 61(a) provides that gross income includes "all income from whatever source derived". See also Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955). On his 2008 return petitioner reported $81,048 of Schedule C gross receipts or sales and zero rental income. Respondent determined that petitioner had actually received $90,266 of Schedule C gross receipts or sales and $7,554 of rental income during that year, leaving $9,218 of Schedule C gross receipts and sales and the full amount of rental income in dispute. On his 2011 return petitioner reported $1,955 of Schedule C gross receipts or sales, but respondent determined that petitioner had received $12,200 of such income, leaving $10,245 in dispute.

Generally, a taxpayer bears the burden of proving the Commissioner's determinations incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115

---

[4]Petitioner subsequently sought to add certain documents to the record by mailing them to the Court, but these documents were not admitted.

**[*7]** (1933).  For determinations of unreported income, the Court of Appeals for the Ninth Circuit, to which an appeal in this case would ordinarily lie, see sec. 7482(b), requires that the Commissioner provide a minimal evidentiary foundation connecting the taxpayer with the unreported income before the presumption of correctness attaches to the Commissioner's determination, see Hardy v. Commissioner, 181 F.3d 1002, 1004-1005 (9th Cir. 1999) ("[T]he Commissioner only need[s] to present some substantive evidence that * * * [a taxpayer] received income[.]"), aff'g T.C. Memo. 1997-97; Weimerskirch v. Commissioner, 596 F.2d 358, 360-361 (9th Cir. 1979), rev'g 67 T.C. 672 (1977); see also Petzoldt v. Commissioner, 92 T.C. 661, 687-691 (1989).  After the Commissioner meets this burden, the taxpayer must establish by a preponderance of the evidence that the Commissioner's determination is arbitrary or erroneous.  See Hardy v. Commissioner, 181 F.3d at 1004.

Respondent offered into evidence a bank deposits analysis, petitioner's bank records that he obtained by summons, and the testimony of the revenue agent who conducted the bank deposits analysis in support of his determination regarding the unreported income.  A taxpayer is required to maintain adequate books and records sufficient to establish his or her income.  See sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).  When

[*8] a taxpayer fails to maintain sufficient records to allow the determination of his correct tax liability, the Commissioner may reconstruct the taxpayer's income using any method that clearly reflects the taxpayer's income. See sec. 446; Petzoldt v. Commissioner, 92 T.C. at 686-687. The reconstruction need only be reasonable. Petzoldt v. Commissioner, 92 T.C. at 687. One established method of reconstructing a taxpayer's income when the taxpayer has inadequate records and large bank deposits is the bank deposits method. See DiLeo v. Commissioner, 96 T.C. at 867; Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977). Bank deposits are prima facie evidence of income. DiLeo v. Commissioner, 96 T.C. at 868. The Commissioner is not required to follow any leads suggesting that a taxpayer may have deductible expenses. Id. at 872. Once the Commissioner has made this prima facie case, the taxpayer bears the burden of showing that the deposits made into his or her account represent nontaxable income. See id. at 869. The taxpayer must present credible evidence to shift the burden of proof to the Commissioner under section 7491(a). Petitioner failed to do so.

Petitioner failed to provide respondent's revenue agent with any records that documented his income. The bank records show that petitioner had over $100,000 of deposits in 2008 and over $46,000 in 2011. We find that it was reasonable for

**[\*9]** respondent to rely on the bank deposits method to reconstruct petitioner's income in these circumstances.  See id. at 867.

2008 Unreported Income

The revenue agent testified that the bank deposits analysis reflected her conclusions regarding the character of the deposits documented in petitioner's bank records that she obtained.  The bank deposits analysis for 2008 consisted of a summary page listing total deposit amounts by category (e.g., Schedule C income) and spreadsheets listing information on each deposit (e.g., date of deposit, payor of check).  The summary page of the bank deposits analysis calculated that petitioner had made deposits of Schedule C gross receipts totaling $98,527 during 2008 but had reported Schedule C gross receipts on his 2008 return of only $81,048--suggesting an unreported amount of $17,479.  The bank deposits analysis further calculated that petitioner had deposited rent receipts totaling $7,641 during 2008 but had reported no rent receipts on his 2008 return.  After adjustments apparently for nontaxable sources, the notice of deficiency determined that petitioner had unreported Schedule C gross receipts of $9,218 and unreported rent receipts of $7,554.

In reviewing the bank deposits analysis and the bank records, the Court has found that the bank deposits analysis double counted $6,179 of deposits

**[*10]** characterized as Schedule C receipts and understated the value of one of the rental income deposits by $270. These errors do not preclude respondent from satisfying his evidentiary foundation requirement using the bank deposits analysis. With the exceptions just noted, each of the deposits that the bank deposits analysis characterized as Schedule C or rent receipts is documented in the bank records. We find that the bank deposits analysis, supported by the bank records and the revenue agent's testimony, meets the evidentiary foundation requirement. See Hardy v. Commissioner, 181 F.3d at 1004; Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994) (stating that respondent is not required to show a likely source of the deposits). Moreover, petitioner has admitted that he worked as an LVN during 2008, sometimes as an independent contractor. He also deposited checks during that year made out to him and bearing the notation "Rent". Respondent has accordingly amply provided an evidentiary foundation regarding petitioner's receipt of unreported income for 2008.

Petitioner has not met his burden of showing that these deposits were not taxable income, see Clayton v. Commissioner, 102 T.C. at 645-646, and consequently, that respondent's determination regarding the unreported income was arbitrary or erroneous, see Hardy v. Commissioner, 181 F.3d at 1004. However, in view of the double counting of $6,179 of Schedule C gross receipts

[*11] deposits, we sustain respondent's determination of unreported 2008 Schedule C gross receipts only to the extent of $3,039. We sustain respondent's determination that petitioner had unreported rental income of $7,554 for 2008. We do not sustain any increase in unreported rental income attributable to respondent's apparent undercounting of $270 in rent receipt deposits.

2011 Unreported Income

The bank deposits analysis for 2011 consists of a summary page and a spreadsheet concerning a limited number of deposits. The summary page indicates that petitioner made deposits of Schedule C income totaling $12,200. These deposits are prima facie evidence of income. See DiLeo v. Commissioner, 96 T.C. at 868. While respondent is not required to show a likely source for the deposits, see Clayton v. Commissioner, 102 T.C. at 645-646, we again note that petitioner has admitted that he worked as an LVN during 2011, sometimes as an independent contractor. Consequently, petitioner bears the burden of proving that respondent's unreported income determination for 2011 is arbitrary or erroneous.

Petitioner claimed (in a status report) that these deposits were nontaxable gifts from Kate Zalwango and Odette Graves. Petitioner did not produce evidence to corroborate this claim or identify deposits in the 2011 bank records that constituted such gifts. Our review of the 2011 bank records revealed three checks

[*12] from Ms. Zalwango totaling $1,100 (two checks for $500 and one check for $100) but no checks or other payments from Ms. Graves. We will assume that respondent determined that the checks from Ms. Zalwango were Schedule C income in the absence of information in the bank deposits analysis indicating how the revenue agent characterized these deposits.[5] In the absence of evidence indicating other payments from Ms. Zalwango or Ms. Graves or contentions that implicate other deposits, we deem petitioner to have conceded the determined Schedule C income in excess of $1,100.

For the two $500 checks, we find that petitioner has not shown that they were nontaxable gifts. Petitioner did not produce any credible evidence to corroborate his statement that they were nontaxable gifts, and the bank records do not provide any indication of the purpose of these payments, such as a note in either check's memo line. For the $100 check, we find that petitioner has shown that it was a nontaxable gift. A "Christmas gift" notation in the memo line of that check corroborates petitioner's statement. We are satisfied that this deposit was a nontaxable gift to petitioner under section 102.

---

[5]Had the revenue agent characterized the checks as "other income", for example, this would not affect the Schedule C income shown in the bank deposits analysis. Because respondent neglected to attach this information to the bank deposits analysis that he introduced into evidence, we will give petitioner the benefit of the doubt.

[*13] We therefore sustain respondent's determination of unreported income for 2011 to the extent of $10,145 ($10,245 less $100 we redetermined to be a gift).

Schedule C Deductions

Petitioner claimed deductions for business expenses of $82,134, $99,718, $87,089, and $16,937 for 2008, 2009, 2010, and 2011, respectively. As detailed in the Schedules C attached to his returns, the expenses underlying the deductions he claimed consisted of the amounts in the table below:

| Expense | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|
| Car and truck | $22,988 | $18,143 | $24,537 | $15,377 |
| Legal and professional services | 7,121 | --- | --- | --- |
| Repairs and maintenance | 7,156 | --- | --- | --- |
| Utilities | 3,652 | --- | --- | --- |
| Other | 41,217 | --- | --- | --- |
| Contract labor | --- | 15,988 | 21,900 | --- |
| Rent or lease--vehicles, machinery, and equipment | --- | 19,443 | 17,015 | 1,560 |
| Rent or lease--other business property | --- | 46,144 | 23,637 | --- |
| Totals | 82,134 | 99,718 | 87,089 | 16,937 |

Respondent disallowed deductions for all of these expenses except for the rent or lease--vehicles, machinery, and equipment entry of $1,560 for 2011. This

**[*14]** leaves $82,134, $99,718, $87,089, and $15,377 in dispute for 2008, 2009, 2010, and 2011, respectively.

Deductions are a matter of legislative grace, and the burden of showing entitlement to a claimed deduction is on the taxpayer.[6] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Section 162(a) generally allows a deduction for the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. To be entitled to a deduction under section 162(a), a taxpayer is required to substantiate the deduction through the maintenance of books and records. Where a taxpayer establishes that he paid or incurred a deductible expense but does not establish the amount of the deduction to which he may be entitled, we may in certain circumstances estimate the amount allowable. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). This is often referred to as the Cohan rule. See, e.g., Van Dusen v. Commissioner, 136 T.C. 515, 537 n.39 (2011).

---

[6]Petitioner has not claimed or shown entitlement to any shift in the burden of proof pursuant to sec. 7491(a).

[*15] Certain expenses, such as vehicle expenses, are subject to the more stringent substantiation requirements of section 274(d), and the Cohan rule may not be used. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a)(4), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). To meet these strict substantiation rules, a taxpayer must substantiate by adequate records or by sufficient evidence corroborating the taxpayer's own statement (1) the amount, (2) timing, and (3) business purpose of the expense. Sec. 274(d). When a taxpayer establishes that his records were lost or destroyed through circumstances beyond his control, the taxpayer may substantiate a deduction through secondary evidence. See Boyd v. Commissioner, 122 T.C. 305, 320-321 (2004) (citing Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979)); Freeman v. Commissioner, T.C. Memo. 2009-213, slip op. at 19-20 (finding that a fire destroyed taxpayer's house and his logbook); sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985).

### Legal and Professional Services, Utilities, and Other Expenses

Petitioner did not address the $51,990 of legal and professional expenses, utilities, and other expenses underlying the deduction he claimed for 2008. We accordingly find that he has conceded them and sustain respondent's disallowance thereof. See Rule 34(b)(4).

**[\*16]** <u>Car and Truck, Repairs and Maintenance, Rent or Lease--Vehicles, Machinery, and Equipment Expenses</u>

Petitioner claimed deductions for vehicle expenses in multiple categories in the previous table.  His testimony indicates that the vehicle expenses were incurred in connection with round trips between residences in La Verne, California, and Lake Elsinore, California, and California State correctional facilities where he claimed that he worked.  He testified that these facilities were in three cities:  Soledad, Delano, and Tehachapi.[7]  He testified that his shifts at these correctional facilities lasted from three to four days, that he lodged overnight near the facilities during his shifts, and that he returned to his residence when he completed his shifts.

His testimony indicates that he claimed deductions for the costs of repairing and maintaining the vehicle used for the round trips in his repair and maintenance entry for 2008 and in his rent or lease--vehicles, machinery, and equipment entries

---

[7]Petitioner did not identify these facilities by name, but the California Department of Corrections and Rehabilitation Web site facilities locator, <u>available at</u> http://www.cdcr.ca.gov/Facilities_Locator/index.html (last visited May 18, 2016), shows a facility in each city--in Soledad, both the Correctional Training Facility and Salinas Valley State Prison; in Delano, the Kern Valley State Prison; in Tehachapi, the California Correctional Institution.

[*17] for 2009 and 2010.[8]  He did not address the car and truck expenses he reported for any of the years at issue, but the business miles that he reported on the lines 44a of his 2009 and 2010 Schedules C (32,988 and 49,073, respectively) when multiplied by the standard business mileage rate for those years (55 cents and 50 cents, respectively[9]) equals the car and truck expenses for which he claimed deductions for those years.  Petitioner did not report any vehicle information on his 2008 return, and the business miles that he reported on his 2011 return, when multiplied by the standard business mileage rates for that year (51 cents and 55 cents for the first and second six months, respectively[10]) fall just short of the car and truck expenses that he reported.  The car and truck expenses

---

[8]Petitioner did not address the rent or lease--vehicles, machinery, and equipment entry for 2010, but we will assume it has the same character as the 2009 entry.

[9]Rev. Proc. 2008-72, sec. 2.01, 2008-50 I.R.B. 1286, 1286 (2009 rate); Rev. Proc. 2009-54, sec. 2.01, 2009-51 I.R.B. 930, 930 (2010 rate).

[10]Announcement 2011-40, 2011-29 I.R.B. 56; Notice 2010-88, sec. 2, 2010-51 I.R.B. 882, 882.

**[\*18]** and other vehicle expenses in dispute total $30,144, $37,586, $41,552, and $15,377[11] for 2008, 2009, 2010, and 2011, respectively.[12]

A taxpayer may be entitled to deduct as a business expense the cost of travel between his residence and temporary places of work where he stays over one or more nights. See sec. 162(a)(2); Dean v. Commissioner, 54 T.C. 663, 667 (1970) ("[W]here a taxpayer does not have a nontemporary principal place of business away from the vicinity of his residence, then his place of residence remains his home for tax purposes."); see also Henderson v. Commissioner, 143 F.3d 497, 499 (9th Cir. 1998), aff'g T.C. Memo. 1995-559. Business use of a passenger automobile is subject to the substantiation requirements of section 274(d) because such a vehicle is "listed property" as defined in section 280F(d)(4)(A)(i). In lieu of calculating expenses using actual expenditures, a taxpayer may use a standard mileage rate as established by the Internal Revenue Service. See Nash v. Commissioner, 60 T.C. 503, 520 (1973); Larson v. Commissioner, T.C. Memo.

---

[11]As noted, respondent allowed the $1,560 claimed in the rent or lease--vehicles, machinery, and equipment entry for 2011.

[12]Petitioner also testified that he incurred rental car expenses, but he did not address either the amounts of these expenses or where he reported them on his return. His testimony indicated that he may have used such rental cars for personal purposes. We thus have no basis for considering the extent to which rental car expenses may have been included in the amounts petitioner listed under the rent or lease--vehicles, machinery, and equipment entries.

[*19] 2008-187, slip op. at 13-14; sec. 1.274-5(j)(2), Income Tax Regs. The amount of mileage can be substantiated by any reasonable means, including by proving that a taxpayer traveled between certain cities and establishing the distance between them. See Smith v. Commissioner, 80 T.C. 1165, 1172 (1983).

Petitioner appears to have claimed deductions for both actual expenses and expenses based on mileage for his vehicle for 2008, 2009, and 2010, but he can claim only deductions for one or the other expense. See Nash v. Commissioner, 60 T.C. at 520. Petitioner failed to produce any evidence that he actually incurred any expenses relating to his vehicle; consequently, we will sustain respondent's disallowance of deductions for the vehicle expenses that petitioner claimed other than those in the car and truck expenses entries on his Schedules C. We will presume that the car and truck expenses are based on business mileage claims. This leaves $22,988, $18,143, $24,537, and $15,377 in dispute for 2008, 2009, 2010, and 2011, respectively.

Petitioner failed to produce any documentary evidence tending to establish the number of business miles he drove for any of the years at issue. He did not, for example, produce a schedule listing the dates of his round trips between his residence and the correctional facilities and the distances driven or documents substantiating that he had made such trips. Petitioner's testimony on the business

[*20] miles he drove was vague and unconvincing. Even if his testimony were credible, he could not rely on it without corroborating documentary evidence because he failed to show that his records were lost due to circumstances beyond his control. See sec. 1.274-5T(c)(5), Temporary Income Tax Regs., supra. He testified that the proprietor of the storage facility where he stored all his records confiscated them in 2011 after he failed to pay storage fees. Petitioner did not produce any documents to substantiate either the storage facility rental or the confiscation. Regardless, we are not persuaded that any such loss of records was beyond petitioner's control.

The bank records show that petitioner used a debit card for purchases that appear to be in the vicinity of the Delano and Tehachapi facilities in 2008, 2009, and 2010 and for purchases that appear to be in the vicinity of the Solano facility in 2009, 2010, and 2011. This evidence by itself, particularly in the absence of credible evidence offered by petitioner on this issue, is insufficient to establish, for purposes of calculating travel expenses, instances when he worked at a correctional facility.

Additionally, the record contains conflicting evidence regarding the location of petitioner's residence that precludes any showing that he had business mileage from driving between certain cities. See Smith v. Commissioner, 80 T.C. at 1172.

**[*21]** Petitioner's testimony indicates that he resided in La Verne and in Lake Elsinore, locations that are approximately 50 miles apart,[13] during the years at issue but does not indicate when he resided at each residence. Petitioner's bank statements from Bank of America and Washington Mutual/Chase suggest that he resided in La Verne during the years at issue, as they are all addressed to him at a La Verne, California, address. Some evidence indicates that petitioner resided in Greenfield, California (which appears to be in the vicinity of the Soledad facilities), in 2009 and 2010. Checks in petitioner's bank records issued in 2009 by "Solvere National Medical Registry Inc." are addressed to a Greenfield address, and State and Federal tax refund checks issued in 2010 are addressed to that address. Petitioner also reported the Greenfield address as his home address on his 2008 and 2009 tax returns. Greenfield is approximately 300 miles from either La Verne or Lake Elsinore. Petitioner reported a Delano, California, home address on his 2010 tax return. Delano is approximately 150 miles from both Greenfield and La Verne. In sum, the evidence does not establish the location of petitioner's tax home so that mileage he may have driven to any temporary work site may be calculated.

---

[13]Stated distances between cities were calculated using Bing Maps. See http://www.bing.com/maps.

**[\*22]** In view of the foregoing, petitioner has failed to satisfy section 274(d) with respect to his reported vehicle-related expenses for any of the years at issue. We sustain respondent's disallowance of deductions for these expenses. See Smith v. Commissioner, 80 T.C. at 1172.

### Rent or Lease--Other Business Property

Petitioner's testimony indicates that the deductions he claimed in the rent or lease--other business property entries on his Schedules C for 2009 and 2010 reflected lodging costs he incurred near the correctional facilities where he worked.[14] As listed in the prior table, the reported expenses were $46,144 and $23,637 for 2009 and 2010 respectively, or approximately $4,000 and $2,000 per month.

Lodging expenses relating to business travel are also subject to section 274(d) substantiation requirements. See sec. 162(a)(2). Petitioner's only substantiation of these expenses was his own vague and unconvincing testimony. He produced no documentation indicating that he paid for lodging near any of the correctional facilities at which he claimed he worked. He also failed to explain why he may have incurred twice as many lodging expenses in 2009 as in 2010.

---

[14]Petitioner addressed only the amount for 2010, but we will assume that the 2009 amount reflects similar expenses.

[*23] Evidence in the record indicating that petitioner resided in Greenfield and Delano suggests that he may have stayed at his residence when working at the correctional facilities, given the proximity. Petitioner did not identify any expenditures documented in the bank records that constituted lodging expenses, and the Court will not assume his responsibility and sift through the bank records to match the evidence to respondent's adjustments. See Hall v. Commissioner, T.C. Memo. 2014-16, at *8. The magnitude of these expenditures renders them quite improbable, and we decline to accept petitioner's self-serving testimony regarding them. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

As petitioner has failed to substantiate these expenses as required by section 274(d), we sustain respondent's disallowance of deductions for them.

Contract Labor

Petitioner testified that he claimed deductions for payments to companies that helped him find work at correctional facilities. Petitioner testified that these companies took a percentage of his compensation from the correctional facilities and then issued him a check for the remainder. As listed in the table supra p. 13, petitioner claimed that the placement companies' take amounted to $15,988 and $21,900 for 2009 and 2010, respectively.

**[*24]** A taxpayer may be entitled to deduct as a business expense payments for placement services. See Primuth v. Commissioner, 54 T.C. 374, 379 (1970). But petitioner did not produce any documentation to substantiate the contract labor expenses, and his contentions require the Court to believe that his payments to the placement companies equaled 17% and 26% of his Schedule C income for 2009 and 2010, respectively. In the absence of any substantiation, we decline to accept petitioner's self-serving testimony regarding expenses of this magnitude. See Tokarski v. Commissioner, 87 T.C. at 77. We therefore sustain respondent's disallowance of deductions for the contract labor expenses.

Additions to Tax

Respondent determined that petitioner is liable for additions to tax for failure to timely file his 2008, 2009, 2010, and 2011 returns. Section 6651(a)(1) provides for an addition to tax when a taxpayer fails to file a return on or before the due date, including extensions. Under section 7491(c), the Commissioner has the burden of production with respect to a taxpayer's liability for the section 6651(a)(1) addition to tax. To meet that burden, the Commissioner must offer sufficient evidence to indicate that it is appropriate to impose the relevant addition. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner meets his burden of production, the taxpayer bears the burden of

**[\*25]** proving error in the determination, including evidence of reasonable cause or other exculpatory factors. Id. at 446-447.

To prove that petitioner filed untimely returns, respondent offered IMFOL-T transcripts for petitioner's 2008, 2009, 2010, and 2011 taxable years and the testimony of the revenue agent. The revenue agent testified that the IMFOL-T transcripts were part of respondent's regularly maintained business records for petitioner. She further testified that each transcript recorded the date when respondent received petitioner's return for that year. The dates of receipts recorded on the transcripts for 2008, 2009, 2010, and 2011 are August 10, 2010, August 16, 2010, August 2, 2011, and July 8, 2012, respectively. The revenue agent also testified that the transcripts indicated that petitioner had not been granted any filing extensions because there was no "EXT" notation next to any of the entries indicating the date of receipt. On the basis of the IMFOL-T transcripts and the revenue agent's testimony, we find that respondent has met his burden of production for imposing on petitioner for 2008, 2009, 2010, and 2011, section 6651(a)(1) additions to tax for untimely filing.

Petitioner failed to prove error in respondent's determination. He contended that he had filed each return well before the date of receipt recorded on the transcript, but he produced no evidence to corroborate his contention. The

[*26] signatures on petitioner's 2009 and 2010 returns are dated March 11, 2010, and May 12, 2011, respectively, but petitioner's entry of those dates on the returns is not evidence of their mailing. Beyond his self-serving testimony, petitioner offered no evidence that he actually mailed the returns timely or that the transcripts contain irregularities. In these circumstances, we decline to accept petitioner's self-serving testimony without corroboration, see Park v. Commissioner, T.C. Memo. 2012-279, at *9, and he has not alleged reasonable cause or another exculpatory factor. Petitioner has thus failed to meet his burden of proof, and we sustain respondent's determination of additions to tax under section 6651(a)(1).

Accuracy-Related Penalties

Respondent determined accuracy-related penalties under section 6662(a) for 2008, 2009, and 2010. Respondent contends that petitioner is liable for these penalties on the basis of substantial understatements of income tax. See sec. 6662(b)(2).

Section 6662(a) and (b)(2) imposes a penalty equal to 20% of an underpayment of tax required to be shown on a return that is attributable to a substantial understatement of income tax. An underpayment of tax for this purpose is defined as the excess of the amount of income tax imposed over the

**[\*27]** sum of the "amount of tax shown as the tax by the taxpayer on his return"

and any tax previously assessed (or collected without assessment), less any

rebates. Sec. 6664(a). If refundable credits specified in section 6211(b)(4) reduce

the amount of tax shown as the tax by the taxpayer on the return below zero, they

are taken into account as negative amounts of tax for purpose of computing the

underpayment. See sec. 6664 (flush language).[15]

An "understatement" is the excess of the amount of tax required to be

shown on a return over the amount of tax shown on the return. Sec.

6662(d)(2)(A). An understatement is substantial when it exceeds the greater of

10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

As with additions to tax under section 6651(a)(1), the Commissioner bears

the burden of production with respect to a taxpayer's liability for penalties. Sec.

7491(c); see Higbee v. Commissioner, 116 T.C. at 446. Once the Commissioner

meets his burden of production, the taxpayer bears the burden of proving it is

---

[15]Sec. 6664 was amended by the Consolidated Appropriations Act, 2016 (CAA), Pub. L. No. 114-113, div. Q, sec. 209(a), 129 Stat. at 3084, to so provide, effective for returns filed after December 18, 2015, or returns filed on or before that date if the period specified in sec. 6501 for assessment of the taxes to which such return relates has not expired as of such date. CAA sec. 209(a) effectively overruled the holding in Rand v. Commissioner, 141 T.C. 376, 390-391 (2013), that, for purposes of computing an underpayment under former sec. 6664(a), refundable credits reduce the amount of tax shown on the return but not below zero.

[*28] inappropriate to impose the penalty because of reasonable cause, substantial authority, or a similar provision. See Higbee v. Commissioner, 116 T.C. at 446. The determination of whether a taxpayer acted with reasonable cause and good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess the proper tax liability. Id.

Respondent has met his burden of production for substantial understatements of income tax for 2008, 2009, and 2010. Petitioner's unreported income for 2008 and disallowed deductions and credits for 2008, 2009, and 2010, as redetermined by this Court, result in understatements of income tax that exceed both 10% of the tax required to be shown on petitioner's returns for those years and $5,000.[16] Petitioner did not show reasonable cause with respect to either his unreported income or his disallowed deductions or credits.[17] Accordingly,

---

[16]The sec. 36A and sec. 32 credits that petitioner claimed for 2010 reduced the amount of tax shown on his return below zero.

[17]Indeed, petitioner provided no records to corroborate that he even incurred any portion of the expenses for which he claimed deductions. The expenses amount to $268,941 for these three years. Because we sustain the sec. 6662(a) penalties on the basis that the underpayments were attributable to substantial understatements of income tax, we do not address whether the underpayments

(continued...)

**[\*29]** petitioner is liable for accuracy-related penalties on his underpayments for 2008, 2009, and 2010.

We have considered all the remaining arguments for results contrary to those reached herein. To the extent not discussed, we conclude those arguments are moot, without merit, or unnecessary to reach.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.

---

[17](...continued)
were also attributable to negligence.